**WARD et al. v. CONTINENTAL INS. CORP. et al.**

No. 20586.   June 20, 1933.

Rehearing Denied Sept. 12, 1933.

Wilcox & Swank, for plaintiffs in error.

Rittenhouse, Lee, Webster & Rittenhouse, and Chester H. Lowry, for defendants in error.

RILEY, C. J.   On or about November, 1922, B. C. Jaggers, being the owner of certain lands in Major county, mortgaged the same to the Interstate Mortgage Company. Thereafter, about April, 1924, the Continental Fire Insurance Company of New York issued its standard form fire and tornado insurance policy to said B. C. Jaggers, insuring certain buildings on said land against loss by fire, etc., for the term of five years. The premiums were payable in equal annual installments due May 1st of each year.

The policy contained a mortgage clause providing that loss or damage, if any, should be payable to the Interstate Mortgage Company, mortgagee, and that such mortgage "shall not be invalidated by * * * any change in title or ownership of the property", and, "whenever this company shall pay the mortgagee any sum for loss or damage under the policy and shall claim that, as to the mortgagor or owner, no liability therefor existed, this company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt".   The policy also provided:

"* * * In case any change shall take place in title or interest or possession (except by succession by reason of the death of the assured) of the property herein named; * * * then in each and every one of the above cases this policy shall be null and void."

About October 16, 1926, said land was conveyed to the Chevrolet Company of Stillwater, Okla., a partnership composed of R. S. Ward, and E. B. Ward, plaintiffs in error herein.

On or about June 18, 1927, the buildings insured were totally destroyed by fire. The insurance company refused to pay either the Chevrolet Company or the mortgagee. Thereupon plaintiffs commenced this action

against the insurance company and the mortgage company, praying for judgment against the insurance company for the amount of the policy, and that same be paid to the mortgage company and for credit accordingly on the mortgage indebtedness. The petition alleges, in substance, that the policy was held by and was in the possession of the mortgage company, and set out in full the mortgage clause in the policy. It further alleged:

"That on the 9th day of June, 1927, a premium on said policy of said insurance having come due in the sum of eleven and 90/100 dollars ($11.90); these plaintiffs paid the same to the Inter-State Mortgage Trust Company, a corporation, defendant herein, with the request that the same be forwarded to the defendant, the Continental Insurance Company, a corporation, which said payment was accordingly made by the Interstate Mortgage Trust Company, a corporation, and said policy of insurance was in full force and effect on the 18th day of June, 1927, and at the time the house and barn, above described, were totally destroyed by fire."

The mortgage company filed its answer setting out a copy of the policy together with the mortgage clause, and asked for judgment against the insurance company.

The insurance company answered denying liability to plaintiffs because of the change in title or possession of the subject of insurance. It also set up the clause in the policy providing for subrogation of the company to all rights of the mortgagee in case of payment by the insurance company to the mortgagee. It further pleaded that it had no notice or knowledge whatever of the change of title until after the loss, and that it had never consented to the change of title or possession.

On cross-petition it pleaded subrogation and tendered into court for the use of the mortgage company the full amount of the policy, and prayed that it be subrogated to the rights of the mortgage company under its mortgage.

Plaintiff replied by general denial and pleaded that it notified the mortgage company that it had bought the property; that the mortgage company paid the premium due on the policy May 1, 1927; and that the mortgage company had called upon plaintiff to reimburse it; and that plaintiff had done so by sending check to the mortgage company, which was received and cashed by it; that plaintiff advised the mortgage company of the purchase of said property, "relying on it to notify the insurance company

of the change in ownership". The reply further alleged:

"* * * And that said defendant mortgage company, having received said premium from these plaintiffs and having received said notice of the change in ownership and having appropriated said premium, paid by plaintiff as aforesaid, are now estopped both at law and in equity from setting up or asserting that said insurance company was not notified of the change in ownership of said premises.

"That if said mortgage company failed to notify the defendant insurance company of the change in ownership and if, by reason of said failure, said policy is void as to these plaintiffs, then these plaintiffs are entitled to a credit on the note and mortgage held by said defendant in the full amount due or to be paid under said policy; and the plaintiffs do hereby and herewith tender into court for the use and benefit of the defendant, the Inter-State Mortgage Company, a sum sufficient to pay the balance due on said note and mortgage, both principal and interest, and ask that upon such payment the defendant be required to execute and deliver a release of said mortgage to the plaintiffs and to deliver the said note and mortgage showing cancellation thereof."

At the trial and after demurrer of the insurance company to the evidence of plaintiff had been sustained, plaintiff asked and obtained leave to reopen the case and amend its reply, alleging, in substance, that on October 24, 1926, one Joe L. Ward, a brother of R. S. Ward, notified the insurance company of the transfer of said property by advising J. K. Exline, resident agent of the insurance company, and requested a transfer of the policy to plaintiff, and that the agent had agreed that such transfer would be made and that, the insurance company having been so notified, and having thereafter accepted the premium, it was thereby estopped from asserting that the policy was void on account of the change of ownership.

Judgment was rendered against plaintiff as to both defendants and in favor of the mortgage company against the insurance company and in favor of the insurance company on its claim of subrogation. Plaintiff appeals.

The trial court made findings of fact relative to the alleged notice to the agent of the insurance company of the change in ownership to the effect that:

"Neither the defendant, Continental Insurance Company, a corporation, nor its agents, were notified of the change of title and ownership of the real estate * * * and that said plaintiffs have wholly failed to es-

tablish such notice of change of title as having been given to the defendant." ,

It is first contended that the court erred in such finding. Upon the issue the evidence was in direct conflict. Plaintiff's witness testified positively that such notice was given, while the agent of the company testified positively that no such notice was given him until after the fire occurred. This being a question of fact, the findings of the trial court thereon will not be disturbed by this court where the evidence is thus in conflict. The question was one of credibility of the witnesses, which question was for the trial court alone to determine.

It is next urged that inasmuch as the insurance company accepted the payment of the premium after the transfer, it thereby confirmed the insurance for the benefit of plaintiff.

In this connection plaintiff cites the rule stated in 26 C. J. 324, to the effect that:

"An acceptance of a premium from a new owner with knowledge of the change of ownership, and of the desire of the new owner to continue the policy in force on the property, has the effect of continuing it in force for his benefit."

This rule could be applicable only in case the insurance company had knowledge of the change in ownership at the time it accepted the premium. The findings of the trial court on the question of notice precludes the application of the rule in the instant case. Furthermore, there is no showing that the insurance company accepted the premium from the "new owner", which was, in fact, paid to the insurance company by the mortgage company.

The mortgage clause attached to the policy provides:

"* * * that in case the mortgagor or owner shall neglect to pay any premium due under this policy * * * the mortgagee shall on demand pay same."

At the time the payment was made to the insurance company, in the absence of notice of change of ownership, the insurance company had the right to assume that payment was being made by the mortgage company under the provisions of the mortgage clause quoted above.

Plaintiff, by reply brief, states that the rule cited from Corpus Juris, supra, was not cited with a view of contending that the insurance company actually had notice of the transfer when it accepted the premium, but says that it was merely cited in connection with the proposition that the insurance company retained and still retains

the premium so paid by plaintiff after knowledge that it had in fact been paid by plaintiff. Plaintiff, in effect, now contends that the insurance company having retained the unearned portion of the premium and having failed to return same after it learned that it was in fact paid by plaintiff, it is in no position to insist that there was no liability to plaintiff, and is therefore not entitled to set up the defense of change of ownership.

The insurance company, however, points out that this question was not raised, directly or indirectly, by allegations in the pleadings and was not mentioned in the motion for a new trial. An examination of the record will disclose that this position of the insurance company . is well taken. Plaintiff first pleaded that it relied upon the mortgage company to notify the insurance company of the change of ownership, and then changed to a position that plaintiff had through a brother notified the agent of the insurance company; at the final hearing plaintiff rested its whole case on the proposition of actual notice to the agent of the insurance company.

It is well settled that a party cannot try his case in the trial court on one theory, and then ask a reversal in this court on a theory not presented to the trial court, and not raised in the pleadings. Bouton v. Carson, 51 Okla. 579, 152 P. 131; Kurz v. Stafford, 135 Okla. 121, 274 P. 674; Render v. Lillard, 61 Okla. 206, 160 P. 705; Polson v. Revard, 104 Okla. 279, 232 P. 435.

However, we are convinced that the judgment denying plaintiff any relief whatever is erroneous.

The mortgage company as a part of its answer alleged that it had no notice of the person in whom the legal title to the land was vested until about December 3, 1927. The evidence and admissions in other parts of its answer show conclusively the contrary. The mortgage company admits having called upon plaintiff on May 17, 1927, to reimburse it on account of the premiums paid on the insurance policy and admits that plaintiff reimbursed it on June 10, 1927. According to plaintiff's evidence, which was undenied, and which, by the demurrer of the mortgage company, is admitted to be true, plaintiff notified the mortgage company of the change of ownership in October, 1926, and requested the mortgage company to notify the insurance company. It did not do so and did not inform plaintiff that it had not done so. The trial court held that although plaintiff did notify the mortgage company and request it to notify the insur-

ance company, the mortgage company was not legally bound to notify the insurance company. Under the facts in this case, we think this cannot be true. Both plaintiff and the mortgage company had an insurable interest in the property. The mortgage company held the policy and knew it provided that it would be void upon a change of ownership of the property insured, unless the insurance company consented to the change. It knew that plaintiff was in no position to notify the insurance company because plaintiff did not know what company had issued the policy. The policy was issued for the benefit of both the owner and the mortgagee. The mortgagee was given the right to pay the premium in case the owner failed to do so. Had it gone thus far and no farther there might be justification for its position. But when the premium came due the mortgage company paid it with knowledge of the fact that plaintiff was then the owner of the property and was depending upon the mortgage company to notify the insurance company of the change in ownership. After having paid the premium, the mortgage company called upon plaintiff to reimburse it, which the plaintiff did. Justice and fair dealing would certainly require that the mortgage company either notify the insurance company of the change in ownership or inform plaintiff that it had not done so in order that plaintiff might protect itself. Instead of so doing it appears that the mortgage company not only lulled the plaintiff into a sense of security, to plaintiff's detriment, but thereafter called upon plaintiff to pay the premium. If plaintiff is now compelled to pay the insurance company the amount of the policy, the loss to that extent would appear to have been caused by a breach of a clear duty the mortgage company owed to plaintiff. There is some authority which would seem to support the holding and judgment of the trial court. But in all the cases which we have found, where the insurance company was required to pay the mortgagee and was held entitled to become subrogated to the rights of the mortgagee, the mortgagee had not been guilty of conduct detrimental to the interest of the new owner, such as was shown in the instant case.

"Subrogation is founded upon principles of justice and equity, and rests upon the principle that substantial justice should be allowed regardless of form. Its basis is the doing of complete, essential and perfect justice between all the parties, without regard to form." 60 C. J. 699.

Under the facts as shown by the evidence, when the demurrer of the mortgage company to plaintiff's evidence was presented, as between the plaintiff and the mortgagee, plaintiff was entitled to have the amount of the policy credited on the mortgage indebtedness. This would leave $50, and some interest, due the mortgage company. The greatest amount for which the insurance company could be subrogated as against the plaintiff was this $50 and interest, for this amount is all that the plaintiff owed the mortgagee.

Upon payment of the amount tendered to the mortgage company, the insurance company should be subrogated to all the rights of the mortgagee. This is in the amount of $50 and interest. When plaintiff shall have paid that amount, it will be entitled to a release of the mortgage.

The judgment is reversed and the cause is remanded for further proceedings in accordance with the views herein expressed.

CULLISON, V. C. J., and ANDREWS, SWINDALL, McNEILL, OSBORN, BAYLESS, and BUSBY, JJ., concur. WELCH, J., absent.