■ ESTREL FAIRFAX, Respondent, v DIME SAVINGS BANK OF WILLIAMSBURG et al., Appellants.—Order, Supreme Court, New York County (Kristin Booth Glen, J.), entered November 16, 1987, which granted plaintiff's motion for summary judgment as to liability and denied the defendants' respective cross motions for summary judgment, unanimously modified, on the law, to reverse the grant of summary judgment to the plaintiff as to all defendants, and to deny such motion, and to grant summary judgment in favor of the defendants Dime Savings Bank of Williamsburg and New York Guardian Mortgage Co. dismissing the complaint as to them, and otherwise affirmed, without costs.

The underlying facts are not in dispute. Roosevelt Smith purchased the subject premises, a house in Amityville, New York, in 1961 with a mortgage from Colonial Realty Co. Immediately thereafter, this mortgage was assigned to defendant Dime Savings Bank, and the mortgage has been serviced by Dime's agent, defendant New York Guardian Mortgage Co. (hereinafter Guardian). At the time he purchased the home, Smith obtained a homeowner's fire insurance policy issued by defendant Fireman's Insurance Company. The original mortgage contained the standard provision obligating the mortgagor to pay to the mortgagee a monthly sum to be deposited in escrow and held for payment of the insurance premiums.

Roosevelt Smith died intestate and the deed to the house passed to his widow, Pearl Smith, in 1977. In 1980, Pearl Smith conveyed the premises to her son, the plaintiff Estrel Fairfax. At all times, the homeowner's fire insurance policy continued to name Roosevelt Smith as the insured. After the premises were conveyed to him, the plaintiff never resided in the premises and he neither signed an assumption of the mortgage nor notified the bank of the conveyance to him. Moreover, he never obtained a homeowner's insurance policy in his own name.

Plaintiff fell into arrears on the mortgage payments from April 1981 on, and eventually, in December 1981, Dime commenced a foreclosure action, which was settled on February 10, 1982 when plaintiff entered into a stipulation with Dime. In the stipulation, the plaintiff acknowledged the default and agreed to make both an immediate lump-sum payment and certain monthly payments thereafter.

When plaintiff failed to comply with the terms of the February 1982 stipulation, Dime recommenced the foreclosure action. An inspection of the premises in December 1982 revealed that it was unoccupied, requiring that the house be boarded up and secured to protect against vandalism. In the meanwhile, the insurance policy covering the property had expired on November 3, 1982, at a time when payments on the mortgage were 10 months in arrears and there was a negative balance in the escrow account. Under those circumstances, Guardian, which had been paying the premiums, did not pay for a renewal term of the policy and the policy therefore was canceled effective January 27, 1983. There is a question as to whether the insurer, Fireman's, notified the plaintiff, or attempted to notify the named insured, of the cancellation of the policy.

A second stipulation to settle the recommenced foreclosure action was entered into on April 6, 1983. Under this stipulation, plaintiff was to make one immediate lump-sum payment, which was to cover mortgage arrears through March 1983 plus certain expenses in connection with the foreclosure action, and was thereafter to make monthly payments to cover the costs of boarding up the premises as well as the monthly mortgage and escrow payments, with the April payment to be made by April 15th. While plaintiff did make the lump-sum payment called for under the stipulation, at that time a negative balance still remained in the escrow account.

On April 14, 1983, the premises were severely damaged by fire.

Plaintiff commenced this action seeking damages from Dime and Guardian for failing to keep the fire insurance policy in effect and against Fireman's for failure to pay for the loss pursuant to the policy. A third cause of action alleges negligence against all of the defendants for failing to notify plaintiff of the lapse in insurance coverage.

Plaintiff moved for summary judgment, and each of the defendants cross-moved for summary judgment dismissing the complaint. The IAS court granted the plaintiff summary judgment based on its view that Dime and Guardian were "arguably" obligated to pay the insurance premiums by virtue of the escrow requirement in the mortgage and that the second stipulation, by virtue of its provision indicating that future monthly payments might have to be adjusted to reflect changes in taxes or insurance rates, imposed an obligation that they either continue paying the policy or at least notify

plaintiff of any defects. We find contrary to the IAS court that these defendants had no such obligation and that summary judgment should have been granted dismissing the complaint against both of them.

In accordance with both statute (Real Property Law § 254 [4]) and the express terms of the subject standard mortgage, the obligation to keep these premises insured rested upon the plaintiff mortgagor. The provision in a mortgage requiring monthly escrow payments is intended to guarantee the existence of a fund from which payment for items such as taxes and insurance premiums can be made when due, but even where such escrow fund is current the mortgagee is not under a duty to acquire new insurance coverage. *(See, Beckford v Empire Mut. Ins. Group,* 135 AD2d 228; *Boyce v National Commercial Bank & Trust Co.,* 41 Misc 2d 1071, *affd* 22 AD2d 848, *lv denied* 15 NY2d 487.) In this case, where the repeated failure of the plaintiff to keep his payments up to date resulted in a negative balance in the escrow account at the time that the insurance expired, there was certainly no obligation on the mortgagee defendants to either continue to pay premiums from the nonexistent fund or to renew the policy.

Nor did the provision for an escrow fund in the mortgage agreement impose a duty on the defendants to notify the plaintiff of the cancellation of the policy covering the mortgaged premises. Since the mortgagee has no duty to give such notice even where the escrow account is current and has a positive balance *(Beckford v Empire Mut. Ins. Group, supra),* there was clearly no obligation upon defendants to do so under the circumstances here present where the payments were in arrears and the mortgage was in the process of being foreclosed.

Reliance by the IAS court on the stipulation of settlement to impose such duties on the mortgagee was misplaced. While that stipulation may have revived and reinstated the mortgage agreement, and even functioned as an implicit recognition of the plaintiff as mortgagor despite the lack of formal assignment, that stipulation nowhere by its terms creates any obligation on the part of the mortgagee to notify plaintiff as to the status of insurance coverage, or to procure such coverage. The stipulation, at best, reinstated the obligations set forth in the mortgage agreement but in no way gave rise to any new obligations or duties on the part of the mortgagee. The fact that future escrow fund payments were contemplated, or may even have been accepted, would not impose a duty on the

bank to acquire such fire insurance. *(Beckford v Empire Mut. Ins. Group, supra; but see, Pacheco v Heussler,* 56 AD2d 85.)

Since there is no basis either under the mortgage agreement or the stipulation of settlement to find that the mortgagee defendants breached any duty to the plaintiff, the grant of summary judgment to plaintiff should be reversed and summary judgment granted to defendants Dime and Guardian dismissing the complaint against them.

With respect to the remaining cause of action against the insurer, Fireman's, the record indicates that there are questions of fact which preclude a summary disposition of that claim. There are questions such as whether Fireman's knew of the original owner's death and continued to accept premiums with such knowledge and whether Fireman's gave proper notice of cancellation so as to effectively cancel the policy or whether the policy should still be in effect.

Accordingly, the grant of summary judgment to plaintiff on this cause of action is reversed and the motion denied. Concur —Sullivan, J. P., Ross, Milonas, Kassal and Ellerin, JJ.