**SUNSET ENTERPRISES**

v.

**WEBSTER & GODDARD, INC.**

Supreme Judicial Court of Maine.

Argued March 7, 1989.
Decided March 28, 1989.

Stephen W. Devine (orally), Portland, for plaintiff.

Wendall Large and James A. McCormack (orally), Richardson & Troubh, Portland, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and HORNBY, JJ.

HORNBY, Justice.

This case involves the obligations of an insurance agent to a customer when the insurance carrier cancels the contract of insurance. We find no separate duty sounding in tort that requires the agent, in addition to the carrier, to notify the insured of the cancellation; and we find no breach of any contract to maintain coverage.

The following facts are undisputed. In May of 1983, Webster & Goddard, through its principal Goddard, approached Sunset Enterprises, Inc., through its principal Leighton, to offer to search for replacement wet marine insurance coverage on the Sea Prince, a fifty-five foot Trumpy yacht owned by Sunset. Although Sunset's corporate address was in New Hampshire, Leighton lived and worked in the Portland, Maine area. A quotation of May 31, 1983, a binder of June 7, 1983, and an INA insurance policy of July 15, 1983, all were sent by Goddard to Leighton in care of Leighton's office in Portland, Maine, and Leighton sent Goddard the INA premium of $3,209.00 securing coverage. Goddard concedes that as early as 1983 he knew that if it were necessary to contact Leighton he should do so through Leighton's office in Portland. The insurance binder and policy, however, listed the corporation as the sole insured at its New Hampshire post office box address, the registered address of the corporation. Although it remained the registered address, at some point the post office box was allowed to lapse. There is no evidence that Goddard was made aware of the lapse.

In June of 1984, as the initial policy was about to lapse, Goddard contacted Leighton's administrative assistant in Portland. As a result, Leighton sent a second premium of $3,950.00 to Goddard and the INA policy was renewed. Subsequently, Leighton informed Goddard that the Sea Prince would be out of the water for an extended lay-up. Goddard sent a resulting INA credit of $910.00 to Leighton at his Portland office. In November of 1984, INA

requested Goddard to obtain an update concerning repairs suggested by an earlier survey. Goddard contacted Leighton's administrative assistant in Portland, talked to the Sea Prince's captain, received the original survey with the captain's marginalia concerning repairs and submitted this document to INA. In December of 1984, INA requested Goddard to obtain an updated marine survey on the vessel. Goddard spoke with a temporary administrative assistant in Leighton's Portland office and requested that a new survey be performed, but he never heard from Leighton and accordingly wrote INA in January that no survey had been furnished. Because of the failure to produce the survey, in March of 1985 INA sent a notice of cancellation by certified mail to Sunset Enterprises at its designated New Hampshire address. The post office box having by this time been discontinued, the letter was returned to INA as undeliverable. INA also sent Goddard a copy of its cancellation notice and Goddard contacted two new carriers, but was unable to secure replacement coverage. Goddard then sent Sunset a letter to that effect at the corporation's New Hampshire address. Goddard did not know that INA's notice to Sunset at this address had been returned as undeliverable. He did not attempt to contact Leighton in Portland either by phone or by mail. Goddard's letter to New Hampshire, sent by first class mail, was never returned to him as undeliverable.

Sometime during the summer of 1985, Leighton telephoned Goddard and asked him whether the Webster & Goddard agency could write insurance for the Sea Prince if it were sold. Goddard responded that it could, if it received a new application and a new survey. There was no other discussion of coverage.

On September 27, 1985, a date following both the cancellation and the lapse of the policy if not further renewed, the Sea Prince foundered on Cousins Island in Casco Bay during Hurricane Gloria and in the process caused damage to other vessels. Leighton learned then for the first time that the Sea Prince was uninsured.

Sunset Enterprises brought this suit against Webster & Goddard claiming negligence in its failure to notify Sunset of the policy's lapse and breach of contract in its failure to maintain insurance coverage or notify Sunset of its unavailability. On cross motions for summary judgment, the Superior Court (Cumberland County; *Fritzsche, J.*) granted Webster & Goddard's motion for summary judgment and denied Sunset's. Sunset has appealed the grant of Webster & Goddard's motion. We affirm.

▓ On the negligence question, the record is clear that Goddard knew that if he wanted to reach Leighton he should do so through Leighton's Portland address or office. For any negligence to be actionable, however, there must first be a duty of care. Sunset has been unable to point to any such obligation on the part of Webster & Goddard sounding in tort. Webster & Goddard was INA's agent, not Sunset's. (At oral argument, Sunset withdrew its argument that Webster & Goddard was a broker.) INA was the insurance carrier, INA cancelled the insurance and INA sent notice of cancellation to the address furnished it by Sunset. We see no basis for concluding as a matter of common law tort that whenever a carrier cancels coverage an agent has a separate obligation to notify the customer. Since Webster & Goddard had no obligation to notify Sunset that coverage had been cancelled, Goddard's behavior in failing to contact Leighton in Portland is immaterial. In this context, we agree with the Vermont Supreme Court that:

> Absent special facts not present here, it is generally well settled that once a policy has been procured as requested, the relationship terminates and no further duty is owed the insured by the insurance agent with respect to such insurance. Specifically, where an insurance company is required to give direct notice of cancellation to the insured, as is the case here, the insurance agent is not liable for a failure to notify, since he is justified in assuming that the insured

would be made aware of the cancellation from other sources.

*Rocque v. Co-operative Fire Insurance Association of Vermont,* 140 Vt. 321, 438 A.2d 383, 386 (1981) (citations omitted).

On the contractual issue, Leighton testified at deposition that there was no oral contract or even any discussion that Webster & Goddard should procure ongoing coverage for the Sea Prince. Sunset's argument appears to be that an implied contract had nevertheless arisen from custom or a course of dealing. The evidence of this custom or course of dealing was the original placement of coverage and the second year renewal. Arguably, a jury could also consider Goddard's attempt to find replacement coverage through two other carriers and his attempt to notify Sunset of his failure as evidence demonstrating Goddard's consciousness of a contractual obligation. Since Sunset and Leighton were unaware of this conduct, however, it could not be used to justify any contractual expectations on Sunset's part. In any event, we need not resolve whether this evidence was sufficient to go to a jury on the issue of contractual obligation. We find that the challenged conduct—the failure to notify Leighton in Portland that replacement coverage was unavailable—is insufficient to constitute a breach of any contract to maintain coverage or notify the insured of its unavailability. Webster & Goddard cannot be faulted for sending the notice that coverage could not be replaced to Sunset's registered corporate address, the same address listed on the insurance policy. Choosing to mail a message of this significance to the insured's registered address, the place where process would be served, cannot be a breach of any contract to maintain coverage or notify the insured of its unavailability where the agent had no reason to question the currency of the address.

The entry is: Judgment affirmed.

All concurring.